UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CARROLL DIANNE CLARK,
Plaintiff,
v.
CAROLYN W. COLVIN, Acting Commissioner of Social Security,
Defendant.

Case No. CV 13-9355 JC

MEMORANDUM OPINION

## I. SUMMARY

On January 3, 2014, plaintiff Carroll Dianne Clark ("plaintiff"), who then had counsel but is currently proceeding *pro se*, filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion")[1] and ("Defendant's Motion"). The
///

[1]Plaintiff concurrently submitted copies of multiple medical records ("Plaintiff's Exhibits" or "Plaintiff's Ex.").

Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; January 7, 2014 Case Management Order ¶ 5.

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.[2]

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

Based on plaintiff's applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") filed on November 24, 2004, plaintiff was found to be disabled beginning on May 1, 2004, due to Graves disease and asthma. (Administrative Record ("AR") 23, 25, 76, 145, 150, 308). The most recent favorable medical decision which found plaintiff to be disabled (*i.e.*, "comparison point decision" or "CPD") was dated June 13, 2005. (AR 23, 308). On April 7, 2011, it was determined that plaintiff was no longer disabled and that plaintiff's benefits would be terminated on June 1, 2011. (AR 23; see AR 70-71). On April 18, 2012, plaintiff requested a hearing before an Administrative Law Judge. (AR 110).

On September 13, 2012, the ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel). (AR 48-67). On February 20, 2013, the ALJ determined that plaintiff's disability "ended on April 1, 2011" and plaintiff had not become disabled again through the date of the decision. (AR 23-32). Specifically, the ALJ found that beginning on April 7, 2011: (1) plaintiff suffered from the following severe combination of impairments: Graves disease, osteoarthritis of the left knee status post total knee replacement, and status post gastric bypass surgery (AR 25, 26); (2) plaintiff's

---

[2]The harmless error rule applies to the review of administrative decisions regarding disability. See Molina v. Astrue, 674 F.3d 1104, 1115-22 (9th Cir. 2012) (discussing application of harmless error standard in social security cases) (citations omitted).

impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 25-26); (3) the impairments present at the time of the CPD decreased in medical severity to the point where plaintiff retained the residual functional capacity to perform light work (20 C.F.R. §§ 404.1567(b), 416.967(b)) and was limited to no more than occasional balancing, stooping, crouching, crawling, kneeling, and climbing of ladders, rope, scaffolding, ramps or stairs (AR 26); (4) plaintiff could not perform her past relevant work (AR 31); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform (AR 31-32); and (6) plaintiff's allegations regarding her limitations were partially not credible (AR 27).

The Appeals Council denied plaintiff's application for review. (AR 6).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).

Once a claimant is found disabled under the Social Security Act, a presumption of continuing disability arises. See Bellamy v. Secretary of Health & Human Services, 755 F.2d 1380, 1381 (9th Cir. 1985) (citation omitted). The Secretary may not terminate benefits unless substantial evidence demonstrates sufficient medical improvement in a claimant's impairment that the claimant becomes able to engage in substantial gainful activity. See 42 U.S.C. § 1382c(a)(4)(A); 42 U.S.C. § 423(f); 20 C.F.R. §§ 404.1594, 416.994; Murray v. Heckler, 722 F.2d 499, 500 (9th Cir. 1983).

///

In assessing whether a claimant continues to be disabled, an ALJ must follow an eight-step sequential evaluation process for DIB claims and a seven-step process for SSI claims:[3]

(1) (DIB cases only) Is the claimant presently engaged in substantial gainful activity? If so, and any applicable trial work period has been completed, the claimant's disability ends. If not, proceed to step two.

(2) Does the claimant have an impairment, or combination of impairments, which meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant's disability continues. If not, proceed to step three.

(3) Has there been medical improvement as shown by a decrease in the medical severity of the impairment(s) present at the time of the CPD?[4] If so, proceed to step four. If not, proceed to step five.

(4) Was any medical improvement related to the ability to work (*i.e.*, has there been an increase in the claimant's residual functional capacity)? If so, proceed to step six. If not, proceed to step five.

(5) Is there an exception to medical improvement? If not, the claimant's disability continues. If an exception from the first group of exceptions to medical improvement applies (*i.e.*,

---

[3]Since the sequential evaluation process for DIB and SSI claims are materially the same except as to the first step (which governs DIB claims only), the Court describes only the DIB process.

[4]"Medical improvement" is defined as "any decrease in the medical severity of [a claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled" (*i.e.*, the CPD). 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i). "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [a claimant's] impairment(s)." Id.

substantial evidence shows that the claimant has benefitted from "advances in medical or vocational therapy or technology" or "undergone vocational therapy" if either is "related to [the] ability to work"), see 20 C.F.R. §§ 404.1594(d) & 416.994(b)(3), proceed to step six. If an exception from the second group[5] applies (*i.e.*, disability determination was fraudulently obtained, claimant was uncooperative, unable to be found, or failed to follow prescribed treatment), see 20 C.F.R. §§ 404.1594(e) & 416.994(b)(4), the claimant's disability ends.

(6) Is the claimant's current combination of impairments severe? If so, proceed to step seven. If not, the claimant's disability ends.

(7) Does the claimant possess the residual functional capacity to perform claimant's past relevant work? If so, the claimant's disability ends. If not, proceed to step eight.

(8) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to do other work? If so, the claimant's disability ends. If not, the claimant's disability continues.

20 C.F.R. §§ 404.1594(f), 416.994(b)(5).

Although the claimant retains the burden to prove disability, the Commissioner has the burden to produce evidence to meet or rebut the presumption of continuing disability. Bellamy, 755 F.2d at 1381 (citation omitted).

///

[5]The second group of exceptions may be considered at any point in the sequential evaluation process. 20 C.F.R. §§ 404.1594(b)(5), 416.994(b)(5)(iv).

### B. Standard of Review

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV. DISCUSSION[6]

### A. A Remand for Evaluation of New Evidence Is Not Warranted

Plaintiff submitted the following documents to the Court: (1) an undated, handwritten "List of Medications" (Plaintiff's Ex. A); (2) a "Thyroid Disorder Medical Assessment Form" dated April 8, 2013, prepared by plaintiff's treating physician, Dr. Michael Popkin (Plaintiff's Ex. B); (3) a "Listing § 1.02A - Major Dysfunction of a Weight Bearing Joint" form dated April 8, 2013, also prepared by Dr. Popkin (Plaintiff's Ex. C); (4) the operative report for plaintiff's May 15, 2011 left total knee replacement (Plaintiff's Ex. D); (5) the operative report for

[6]The Court liberally construes Plaintiff's Motion to raise the arguments addressed herein.

plaintiff's December 17, 2013 left right knee replacement (Plaintiff's Ex. E); (6) the operative report for plaintiff's June 26, 2014 procedure to address "stiff right knee following total knee replacement" (Plaintiff's Ex. F); (7) 2014 medical records of physical therapy on plaintiff's right knee (Plaintiff's Ex. G); and (8) a public transportation fare debit card (Plaintiff's Ex. H). Plaintiff appears to suggest that a remand is required to permit consideration of such evidence. (Plaintiff's Motion at 3; Plaintiff's Exs. A-H). The Court disagrees.

First, Exhibit D is a duplicate of a medical record that the ALJ already considered. (AR 27, 348-52). To the extent plaintiff suggests that such evidence reflects more significant limitations than identified in the ALJ's residual functional capacity assessment for plaintiff (Plaintiff's Motion at 4-5), the Court will not second-guess the ALJ's reasonable determination otherwise. See Robbins, 466 F.3d at 882 (citation omitted).

Second, it appears that plaintiff submitted Exhibits A, E, F, G, and H for the first time to this Court. A district court may remand a case in light of new evidence that was not before the ALJ or the Appeals Council if the plaintiff demonstrates that: (1) "the new evidence is material to a disability determination;" and (2) the "claimant has shown good cause for having failed to present the new evidence to the ALJ earlier." Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001) (citing 42 U.S.C. § 405(g)); Booz v. Secretary of Health & Human Services, 734 F.2d 1378, 1380-81 (9th Cir. 1984) (new evidence material if there is a "reasonable possibility" it would have changed ALJ's decision). Plaintiff does not make such showings here. For example, Exhibit A is an undated, handwritten list of medications, Exhibits E, F, and G relate to plaintiff's right knee replacement surgery in December 2013, and Exhibit H is simply a public transportation fare debit card. Plaintiff fails to show a reasonable possibility that such evidence relates at all to plaintiff's condition during the

///

relevant time period (*i.e.*, between April 7, 2011, when plaintiff's benefits were terminated, and February 20, 2013, when the ALJ issued the decision).

Finally, Exhibits B and C, submitted for the first time to the Appeals Council, would not undermine the ALJ's decision. See generally Brewes v. Commissioner of Social Security Administration, 682 F.3d 1157, 1163 (9th Cir. 2012) ("[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."); see also Taylor v. Commissioner of Social Security Administration, 659 F.3d 1228, 1231 (9th Cir. 2011) (courts may consider evidence presented for the first time to the Appeals Council "to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error") (citation omitted). Neither exhibit identifies plaintiff at all. (AR 554, 563). In addition, any medical opinions in the exhibits are expressed purely in a check-the-box format. (AR 563-66, 554-55). Neither provides an explanation of specific clinical findings (*i.e.*, results of objective testing or a physical examination) that support any significant limitations beyond those already accounted for in the ALJ's residual functional capacity assessment for plaintiff. Moreover, as the ALJ noted, Dr. Popkin's treatment records for plaintiff overall reflect mostly routine visits for medication refills (AR 30, 466, 468-71, 615-16, 618-19), and few, if any, "substantial clinical findings." (AR 30; see AR 472-74 [unremarkable pre-operation physical examination], AR 495-525, 530, 533-42, 552-53, 575-77, 632-68 [general lab reports and unrelated testing], AR 175-94, 526-29, 543-53, 567-74, 581-614, 621-31, 669-73 [records related to period before plaintiff's benefits were terminated]). The ALJ would be entitled to reject the opinions expressed in the two exhibits on these grounds alone. See, e.g., Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) ("ALJ [] permissibly rejected [medical evaluations] because they were check-off reports

that did not contain any explanation of the bases of their conclusions."); see De Guzman v. Astrue, 343 Fed. Appx. 201, 209 (9th Cir. 2009) (ALJ "is free to reject 'check-off reports that d[o] not contain any explanation of the bases of their conclusions.'") (citing id.); Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized medical opinions over check-off reports); see also Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly rejected where physician's progress notes "provide[d] no basis for the functional restrictions he opined should be imposed on [the claimant]").

Accordingly, plaintiff is not entitled to a reversal or remand on this basis.

### B. The ALJ's Findings at Step Two Are Free of Material Error

#### 1. Pertinent Law

At step two of the above-described sequential evaluation process, the ALJ must determine whether a claimant has an impairment or combination of impairments that meets or equals a condition outlined in the listing. See 20 C.F.R. §§ 404.1594(f)(2), 416.994(b)(5)(i). An impairment matches a listing if it meets all of the specified medical criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). An impairment that manifests only some of the criteria, no matter how severely, does not qualify. Sullivan, 493 U.S. at 530; Tackett, 180 F.3d at 1099. An unlisted impairment or combination of impairments is equivalent to a listed impairment if medical findings equal in severity to all of the criteria for the one most similar listed impairment are present. Sullivan, 493 U.S. at 531. A determination of medical equivalence must be based on objective medical evidence only. See Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (citation omitted).

Although a claimant bears the burden of proving that she has an impairment or combination of impairments that meets or equals the criteria of a listed impairment, an ALJ must still adequately discuss and evaluate the evidence before

concluding that a claimant's impairments fail to meet or equal a listing. Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990). Remand is appropriate where a plaintiff demonstrates that the ALJ failed adequately to consider a listing that plausibly applies to the plaintiff's case. See Lewis, 236 F.3d at 514.

In order to be considered presumptively disabled under Listing 1.02A, a claimant must demonstrate that (1) she has major dysfunction of a major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle) characterized by gross anatomical deformity and chronic joint pain and stiffness, with signs of limitation of motion or other abnormal motion of the affected joint; (2) medical imaging reflects narrowing, destruction, or ankylosis of the affected joint; and (3) the dysfunction results in an "inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.02(A); see Hamilton v. Astrue, 2010 WL 3748744, at *5 (C.D. Cal. Sep. 22, 2010).

**2. Analysis**

Plaintiff appears to argue that the ALJ failed properly to consider (1) whether plaintiff's impairments meet Listing 1.02A; and (2) whether plaintiff's Graves disease equals a listing. (Plaintiff's Motion at 4-5). A reversal or remand is not warranted on either basis.

For the reasons discussed above, Dr. Popkin's conclusory and unsupported opinions in the "Listing § 1.02A - Major Dysfunction of a Weight Bearing Joint" form (Plaintiff's Ex. C; AR 554-55) are insufficient to show that the listing plausibly applies to plaintiff's case. The same is true for Dr. Popkin's specific check-the-box conclusory opinion therein that plaintiff's impairments are "medically equivalent" to Listing § 1.02A. Non-medical opinions that plaintiff is disabled or unable to work are not binding on the Commissioner. See Boardman v. Astrue, 286 Fed. Appx. 397, 399 (9th Cir. 2008) ("[The] determination of a claimant's ultimate disability is reserved to the Commissioner . . . a physician's opinion on the matter is not entitled to special significance."); Ukolov v. Barnhart,

420 F.3d 1002, 1004 (9th Cir. 2005) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.") (citation omitted); 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); 20 C.F.R. § 416.927(d)(1) (same). In addition, as noted above, the ALJ considered the operative report from plaintiff's May 15, 2011 left total knee replacement (Plaintiff's Ex. D) and reasonably concluded that it did not reflect a disability that lasted for more than twelve months, much less a listing-level impairment. (AR 27-28) (citing Exhibits 9F at 17-21 [AR 348-52], 10F at 5 [AR 365]). To the extent plaintiff suggests that such evidence reflects a "major dysfunction of a weight bearing joint" or otherwise meets Listing 1.02A (Plaintiff's Motion at 4-5), the Court will not second-guess the ALJ's reasonable determination to the contrary.

In addition, plaintiff does not present a plausible theory as to how her Graves disease would equal a listed impairment. As the ALJ pointed out, in March 2011 plaintiff was noted as doing "quite well" on her thyroid medication, and in August 2011 plaintiff told a state-agency examining physician that her thyroid function tests "have been within the normal range." (AR 26, 31, 342, 379). Also, for the reasons discussed above, Dr. Popkin's conclusory, check-box opinions in the April 8, 2013 Thyroid Disorder Medical Assessment Form (Plaintiff's Ex. B [AR 563-66]) are insufficient to demonstrate otherwise.

Accordingly, plaintiff is not entitled to a reversal or remand on this basis.

**C. The ALJ Properly Evaluated the Medical Evidence**

First, plaintiff's conclusory assertion that the ALJ "[did not] provide objective evidence that [plaintiff's] conditions had improved" (Plaintiff's Motion at 11) is belied by the record. For example, as the ALJ noted, although plaintiff was initially found disabled due to Graves disease, the record reflects that in

March 2011 plaintiff's thyroid problem was being successfully treated by medication and by August 2011 plaintiff reported that her thyroid function tests were "within the normal range." (AR 26, 31, 342, 379). Moreover, a state-agency examining physician opined, in pertinent part, that plaintiff's "thyroid condition does not provide the basis for any functional limitation" and that plaintiff had no functional limitations beyond those included in the ALJ's Residual functional capacity assessment for plaintiff. (AR 26, 383-84). The opinion of the state-agency examining physician was based on the doctor's independent examination of plaintiff, and thus, without more, constituted substantial evidence supporting the ALJ's determination that plaintiff's medical condition had improved. See, e.g., Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultative examiner's opinion based on independent examination of claimant constituted substantial evidence supporting ALJ's findings) (citations omitted).

Second, the record also belies plaintiff's assertion that the ALJ "total[l]y ignored" the side effects (*i.e.,* "drowsiness") of plaintiff's prescription medication (Plaintiff's Motion at 8, 12). As the ALJ suggested, while Dr. Popkin's treating records reflect that plaintiff was prescribed several medications, they do not appear to document any significant side effects. (AR 30, 466, 468-74). In any event, to the extent the ALJ erred in this respect, any such error would have been harmless. In short, plaintiff points to no evidence in the record which plausibly suggests that plaintiff experienced medication side effects which caused functional limitations beyond those already accounted for in the ALJ's residual functional capacity assessment.

Third, plaintiff's conclusory assertion that the ALJ "entirely ignor[ed]" plaintiff's treating physician (Plaintiff's Motion at 8, 12-13) is belied by the ALJ's decision which addresses Dr. Popkin's medical records for plaintiff and concludes that the records reflected mostly routine visits for medication refills and otherwise

///

generally unremarkable medical findings. (AR 30, 175-94, 466, 468-74, 495-530, 533-53, 567-77, 581-616, 618-19, 621-73).

Fourth, plaintiff's assertion that the ALJ "did not get specific medical evidence about [plaintiff's] impairments and how [plaintiff's] impairments affect [plaintiff's] day-to-day functioning" (Plaintiff's Motion at 11) is also belied by the record which reflects that plaintiff attended multiple consultative examinations. (AR 379-88, 389-94, 414-21).

Finally, with respect to plaintiff's general allegations that, among other things, the ALJ "ignored an important medical condition," "ignore[d] all [of plaintiff's] medical allegations," and failed to give "proper weight" to plaintiff's treating physician, and that the state-agency examining doctors were "biased" (Plaintiff's Motion at 7, 12-13, 14), any claim of error based on such conclusory pleading does not merit relief. Cf. Carmickle v. Commissioner, Social Security Administration, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (courts "ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief") (citation and internal quotation marks omitted).

Accordingly, plaintiff is not entitled to a reversal or remand on this basis.

**D. The ALJ Properly Evaluated Plaintiff's Credibility**

**1. Pertinent Law**

An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment. Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1036 (citations omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

To find a claimant not credible, an ALJ must rely on reasons unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), internal contradictions in the claimant's statements and testimony, or conflicts between the claimant's testimony and the claimant's conduct (*e.g.*, daily activities, work record, unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment). Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005). Although an ALJ may not discredit a claimant's testimony solely because it is not substantiated by objective medical evidence, the lack of medical evidence is a factor that the ALJ may consider in assessing credibility. Burch, 400 F.3d at 681.

Evaluation of credibility and resolution of conflicts in the testimony are solely functions of the Commissioner. Greger, 464 F.3d at 972. Accordingly, if the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citation omitted).

**2. Analysis**

First, the ALJ properly discredited plaintiff's subjective complaints due to internal conflicts within plaintiff's own statements and testimony. See Light v.

Social Security Administration, 119 F.3d 789, 792 (9th Cir.), as amended (1997) (in weighing plaintiff's credibility, ALJ may consider "inconsistencies either in [plaintiff's] testimony or between his testimony and his conduct"). For example, as the ALJ noted, plaintiff stated in her February 2011 Function Report that she would spend most of her social time alone, speak with family and friends only when she is "up to it," and go out only "now and again." (AR 191). In contrast, in September 2011, plaintiff told Dr. Stephen Erhart, a state-agency examining psychiatrist, that during the day she would engage in "active socializing." (AR 391). Only two months later (*i.e.*, November 2011), however, plaintiff told Dr. Ellen Sherrill, a state-agency examining psychologist, that she "[did] not spend much time with her family or others in general." (AR 415).

Similarly, plaintiff stated in her Function Report that she could only "prepare [some] simple meals for [herself]" and could not do household chores very often, but had a homemaker who would cook and do chores for her, and that she "sometimes" needed help with bathing. (AR 188-89). Plaintiff told Dr. Michael S. Wallack, a state-agency examining physician, that she only did "light cooking and cleaning." (AR 380). Nonetheless, plaintiff told Dr. Erhart that she was able to "oversee[] her household," perform all of her own activities of daily living, and "prepare[] all meals for her child" (AR 391), and told Dr. Sherrill that she "[was] able to perform all basic household chores unassisted," and that she could run errands and go shopping "alone," "cook meals without help," and "perform all self-care activities independently, including dressing and bathing herself." (AR 416).

As the ALJ also noted, plaintiff stated in her Function Report that she did not drive due to pain and muscle weakness and because she lacked a driver's license. (AR 30, 190). Plaintiff told Dr. Wallack that she did not drive (AR 380), and told Dr. Erhart that she had never held a driver's license for "philosophical"

///

reasons (AR 391). In contrast, plaintiff told Dr. Sherrill that her "basic means of transportation" was driving a car. (AR 416).

Second, the ALJ properly discounted the credibility of plaintiff's subjective complaints as inconsistent with plaintiff's daily activities and other conduct. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (inconsistency between the claimant's testimony and the claimant's conduct supported rejection of the claimant's credibility). For example, as the ALJ noted, contrary to plaintiff's allegations of disabling physical and mental symptoms, plaintiff admitted, among other things, that she could actively socialize, that she enjoyed multiple daily interests including reading, writing, watching television, art, using the computer, and "keeping up with worldly things," and told Drs. Erhart and Sherrill that she could engage in the multiple daily activities noted above. (AR 31, 191, 391, 416).

While a claimant "does not need to be 'utterly incapacitated' in order to be disabled," Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (citation omitted), this does not mean, as plaintiff suggests (Plaintiff's Motion at 9-10) that an ALJ must find that a claimant's daily activities demonstrate an ability to engage in full-time work (*i.e.*, eight hours a day, five days a week) in order to discount the credibility of conflicting subjective symptom testimony. See Molina, 674 F.3d at 1113 (citations omitted). Here, even though plaintiff stated that she had difficulty functioning, the ALJ properly discounted the credibility of plaintiff's subjective-symptom testimony to the extent plaintiff's daily activities were inconsistent with a "totally debilitating impairment." Id. ("[An] ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting . . . [e]ven where those activities suggest some difficulty functioning. . . .") (citations omitted); see, e.g., Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that the claimant's ability to "take care of her personal needs, prepare easy meals, do light housework and shop for some groceries . . . may be seen as inconsistent with the presence of a

condition which would preclude all work activity") (citation omitted). To the extent plaintiff suggests that "the bulk of the evidence" reflects "far greater . . . functional limitations" (Plaintiff's Motion at 10), the Court declines to second-guess the ALJ's reasonable determination to the contrary, even if the evidence could give rise to inferences more favorable to plaintiff. See Rollins, 261 F.3d at 857 (citation omitted).

Third, the ALJ properly discounted plaintiff's credibility, in part, based on plaintiff's initial refusal to attend consultative examinations. (AR 27, 308); see Thomas, 278 F.3d at 959 (ALJ may discount credibility where claimant fails to cooperate during examinations) (citation omitted); see generally 20 C.F.R. §§ 404.1594(e)(2), 416.994(b)(4)(ii) (claimant may be found "no longer disabled" without evidence of medical improvement if claimant fails, without good cause, to submit to physical or mental examination).

Finally, the ALJ properly discredited plaintiff's subjective complaints due, in part, to the absence of supporting objective medical evidence. See Burch, 400 F.3d at 681. For example, as the ALJ noted, only three weeks after plaintiff underwent a left total knee replacement in May 2011, plaintiff stated that she was "doing quite well," that she needed crutches to walk only for stability and only while outside of the house. (AR 348-53, 365). In addition, in August 2011 plaintiff told Dr. Wallack that her left knee replacement had been "successful." (AR 380). Also, during a gastric bypass pre-operative examination, Dr. Popkin noted plaintiff's sensory and motor exams as being "normal," and noted that plaintiff's "gait [was] normal" and that plaintiff was "alert and oriented x3." (AR 30, 473). As discussed above, in March 2011 plaintiff was noted as doing "quite well" on her thyroid medication, and in August 2011 plaintiff told Dr. Wallack that "her thyroid function tests [had] been within the normal range." (AR 26, 31, 342, 379). As the ALJ also noted, Dr. Sherrill opined that plaintiff's purported memory loss "was not apparent during the [psychological] evaluation" and that

plaintiff "[did] not present with any significant symptoms of a work-related functional limitation that [could] be attributed to a Major Mental Disorder." (AR 418).

Accordingly, plaintiff is not entitled to a reversal or remand on this basis.

**E. Plaintiff Has Not Made a Colorable Due Process Claim That Would Require a Remand**

While only "final" Social Security decisions are generally subject to review in federal court, certain discretionary decisions in a Social Security case may be reviewable if a plaintiff makes a "colorable constitutional claim" that an Administration decision violated the plaintiff's "due process right either to a meaningful opportunity to be heard or to seek reconsideration of an adverse benefits determination." See Dexter v. Colvin, 731 F.3d 977, 980 (9th Cir. 2013) (citations and quotation marks omitted). Plaintiff has not made a colorable constitutional claim here.

First, the record belies plaintiff's conclusory assertions that her "testimony was almost none existing [sic]" and that her attorney essentially was not permitted to ask plaintiff questions about "any relevant subjects." (Plaintiff's Motion at 7). The record reflects that during the administrative hearing, which lasted twenty minutes, plaintiff testified extensively in response to questioning by the ALJ regarding multiple issues related to her case, plaintiff's attorney was expressly given an opportunity to ask questions, and at the end of the hearing the ALJ also asked plaintiff if she had "[a]ny questions." (AR 50-66).

Second, to the extent plaintiff contends that the ALJ failed to consider competent lay witness evidence (Plaintiff's Motion at 10), plaintiff's argument lacks merit. When the ALJ asked if plaintiff had any questions plaintiff said nothing about an unnamed lay "witness" that she now claims was improperly not called at the hearing. (AR 66). Plaintiff points to nothing else in the record which

///

supports such an assertion, much less suggests that the ALJ in any way improperly prevented the witness from testifying.

Finally, with respect to plaintiff's general allegations that the ALJ "did not include all the facts in [plaintiff's] case," "cheated [plaintiff] out of a fair decision on [her] claim," "refuse[d] to apply social Security law and regulations in rendering [the] decision," "ignored established law," and "disregarded [plaintiff's] testimony and bullied [her] attorney," and that the Social Security Administration engages in "a pattern of deliberate acts engineered to avoid approving meritorious claims and to support pre-ordained unfavorable decisions" (Plaintiff's Motion at 8-11), any claim of error based on such conclusory pleading does not merit relief.

Accordingly, a remand or reversal on this basis is not warranted.

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: February 9, 2015

/s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE